UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS JONES,

                Plaintiff,

v.                                              Case No. 23-cv-121-pp

JACQUELINE M. HEIDT, WARDEN WELLS
and DEPUTY WARDEN MELMAN,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4)**

       Travis Jones, who is incarcerated at Kettle Moraine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and denies without prejudice his motion to appoint counsel, dkt. no. 4.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

       The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 1, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $16.97. Dkt. No. 8. The court received that fee on February 22, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff alleges that he was incarcerated at the Racine Correctional Institution when the events described in the complaint took place. Dkt. No. 1 at 1. He has sued Officer Jacqueline M. Heidt, Warden Wells and Deputy Warden Melman. Id. at 2 ¶¶3-5. The plaintiff states that Heidt was the supervisor in Racine's restrictive housing unit, where she heard conduct reports, sentenced incarcerated individuals to disciplinary separation and supervised release from restrictive housing. Id. at ¶6.

The plaintiff alleges that from March 1 until August 5, 2022, Heidt sexually abused him. Id. at ¶9. He says that he initially consented to the relationship, but then she forced him to engage in sexual acts against his will, which included forcing him to have sex with her to be released from restrictive housing after he was sentenced to sixty days disciplinary separation. Id. at ¶10. The plaintiff states that on July 21, 2022, he received sixty days disciplinary separation and, after serving sixteen days, Heidt released him in return for oral sex. Id. at 2-3 ¶¶11-12. He says that Heidt then tried to hand him a cell phone and, when he tried to refuse, she threated that if he didn't accept it, she would make it look like he already possessed it and he would go to restrictive housing and a maximum security institution. Id. at 3 ¶13. The plaintiff states that he told Heidt he didn't want to be "maxed out and [he] came too far to be going backwards" and she responded, "No, you belong to me now" and continued to tell him how she needed him and she was in love in him. Id. at ¶14. He alleges that about two and a half months later, Heidt showed him an ultrasound showing that she was pregnant. Id. at ¶15. The plaintiff says he began to keep photos and texts in the cell phone she gave him to prove he wasn't lying about being in the "unwanted relationship." Id. at ¶16. The plaintiff seeks declaratory relief and damages. Id. at ¶¶17, 19.

    C.    <u>Analysis</u>

To establish that Heidt's conduct violated the plaintiff's Eighth Amendment rights, the plaintiff must show that she acted with deliberate indifference to an excessive risk to the plaintiff's health or safety. J.K.J. v. Polk

Cty., 960 F.3d 367, 376 (7th Cir. 2020) (sexual assaults that correctional officer committed against incarcerated individuals imposed serious risk to their safety, and officer knew of the danger) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). The plaintiff's allegations that Heidt coerced him to have a sexual relationship with her against his will implicates his rights under the Eighth Amendment; the plaintiff may proceed against Heidt in her individual capacity on an Eighth Amendment claim.

The complaint also cites a case about negligence under Wisconsin law dkt. no. 1 at 4; the plaintiff has not stated a negligence claim. He claims that Heidt deliberately and intentionally coerced him into unwanted sexual conduct. The court will not allow the plaintiff to proceed on a state-law negligence claim.

The complaint does not alleged any conduct on the part of defendants Wells and Melman. The court suspects that the plaintiff has sued them only because they were supervisors—the warden and deputy warden of the institution. "But in order to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation." Rasho v. Elyea, 856 F.3d 469, 478 (7th Cir. 2017) (quoting Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2011)). "A defendant will be deemed to have sufficient

personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge and consent." Id. The plaintiff has not alleged that either Wells or Melman knew anything about Heidt's conduct or that they were involved in it in any way. He has not alleged that Wells or Melman knew about or consented to Heidt's alleged actions. The court will dismiss Wells and Melman as defendants.

### III. Motion to Appoint Counsel (Dkt. No. 4)

The plaintiff has filed a motion to appoint counsel. Dkt. No. 4. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the

6

court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other

7

characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

In his motion, the plaintiff asserts that he cannot afford counsel, that the issues in the case are complex and that he has limited knowledge of the law. Dkt. No. 4. In his supporting brief, the plaintiff—oddly—states that he is asserting claims for denial of adequate medical attention and that he repeatedly complained of pain in his arm that staff ignored. Dkt. No. 5 at 1. The entire brief assumes that the plaintiff is making a deliberate-indifference-to-serious-medical-need claim, which he is not. The plaintiff also submitted an affidavit, in which he indicates that he has alleged that he was subject to sexual abuse but in which he also asserts that his case is complex because it "contains several different legal claims, with each claim involving a different set of defendants," and that the case "involves medical issues that may require expert testimony." Dkt. No. 6 at 1.

None of the three documents indicate that the plaintiff tried on his own to find a lawyer. None of them identify any lawyers the plaintiff has contacted or their responses. The plaintiff has not met the first requirement of Pruitt.

Even if the plaintiff had provided the court with evidence that he'd tried to find a lawyer on his own, the court would not appoint counsel at this stage. The issues the plaintiff identifies in his motion—that he can't afford a lawyer, that his case is complex and that he has no legal knowledge—unfortunately are

8

common to almost every incarcerated plaintiff who files a lawsuit in federal court, and there are not sufficient volunteer lawyers to represent every plaintiff. Nor does the court agree that the plaintiff's case is complex. He has alleged that a single defendant—Heidt—coerced him into having unwanted sexual contact with her. That is a narrow, straightforward claim. The plaintiff knows the facts, and he articulated them well in his complaint. While his motion, brief and affidavit confusingly indicate that he thinks he also has alleged deliberate indifference to medical needs claims, he has not done so. The plaintiff's complaint is clear, understandable and concise. The plaintiff does not allege mental illness or cognitive deficiency.

The next step in the case will be for Heidt to answer or respond to the allegations the plaintiff has made. Once that happens, the court will issue a scheduling order, giving each side the opportunity to ask the other for information and documents. The plaintiff's filings thus far indicate that he is more than capable of making those requests. There may come a time when the issue become too complicated for the plaintiff to manage on his own; that time has not yet arrived. The court will deny the plaintiff's motion without prejudice, meaning that he may bring the motion again later in the case if the litigation becomes too complicated for him to handle.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

9

Case 2:23-cv-00121-PP   Filed 06/13/23   Page 9 of 12   Document 10

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DISMISSES** defendants Wells and Melman.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Jacqueline Heidt. Under the informal service agreement, the court **ORDERS** this defendant to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$272.39** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Kettle Moraine Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 13th day of June, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**